UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| HERSHEL M. POOLE, JR. | CIVIL ACTION NO.  14-0611 |
| VERSUS | JUDGE ROBERT G. JAMES |
| SHERIFF JAY RUSSELL, ET AL. | MAG. JUDGE KAREN L. HAYES |

**OPINION**

Plaintiff Hershel M. Poole, Jr. ("Poole"), brought this lawsuit, alleging violations of 42 U.S.C. § 1983, namely that he was (1) falsely arrested, (2) subjected to excessive force, and (3) retaliated against for exercising his First Amendment Rights against Defendants Ouachita Parish Sheriff Jay Russell ("Russell") and Ouachita Sheriff Deputies James Felts, Bradley Frost, William Craig, and Seth Cox (collectively, "Defendants"). Poole also asserts a battery claim under Louisiana state law against Defendants and a vicarious liability claim solely against Russell.

A bench trial was held October 4-5, 2016. The parties made closing arguments, but waived the filing of post-trial briefs. The Court then took the matter under advisement.

**I.    FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Court hereby enters the following findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, the Court hereby adopts it as such, and to the extent that any conclusion of law constitutes a finding of fact, the Court hereby adopts it as such.

A.      FINDINGS OF FACT

Poole owns property at 110 Smith Cemetery Road, West Monroe, Louisiana. He resides

in a trailer on the property. Poole had made several previous complaints and phone calls to the

Ouachita Parish Sheriff's Office ("OPSO") concerning trespassing and vandalism on his property.

Deputy Felts responded to several of Poole's calls. In 2012, Poole made a call to the OPSO

complaining of people trespassing on his property. Deputy Felts responded to the call at Poole's

property and warned Poole about excessive calls to the OPSO. Poole testified that Deputy Felts

threatened to arrest him if he made any additional calls to the OPSO.

On March, 22, 2013, a funeral was held at Smith Cemetery, which is located on Smith

Cemetery Road to the rear of Poole's property. Before the funeral services began, some funeral

attendees parked their vehicles on property owned by Poole. A confrontation between Poole and

some of the funeral attendees, specifically Barbra Hill ("Hill") and Jeffery Ingram, ensued over

what property belonged to the cemetery.

Poole then placed a call to the OPSO to complain about trespassers on his property.

Because of his prior working relationship with OPSO Captain Morris,[1] Poole asked the

dispatcher to contact Captain Morris concerning his complaint about the funeral attendees

trespassing on his property. Captain Morris returned Poole's call and instructed Poole to call him

back on his cell if he had any additional trouble.

After the funeral concluded, Hill testified that she drove out of the cemetery on Smith

Cemetery Road, passing Poole as he sat on the small porch attached to the front of his trailer. Hill

---

[1] Beginning in July 2006, Poole had worked as a compensated narcotics informant for
Captain Bob Morris with the Special Crimes Apprehension Team ("S.C.A.T.") of the OPSO.

2

called 911 in response to Poole's disruptive behavior while he was standing on his porch as the vehicles left the cemetery. Poole also called Captain Morris on his cell phone to report further disturbances on his property involving the funeral attendees. Around 3:40 p.m., Deputy Cox responded to a radio call of a disturbance at Smith Cemetery Road. Deputy Cox arrived at Poole's property and spoke to Poole and some of the funeral attendees. Deputy Cox, believing he had resolved the situation, left Poole's property within minutes.

Hill left for her home in Calhoun, Louisiana, but returned to Smith Cemetery Road when her son, Ray Hill, called to inform her that OPSO deputies had arrived at the scene and had requested to speak to her. However, by the time Hill returned to Smith Cemetery Road, Deputy Cox had already left the scene, and Poole had gone back inside his trailer. Hill then proceeded down Smith Cemetery Road with other funeral attendees to pick up flowers that were left at the grave site. Poole stood on his porch again after he noticed a few cars had returned to Smith Cemetery.

Hill testified that when they exited Smith Cemetery, Poole began shouting profanities at them and trying to provoke Hiram Tripp ("Tripp") into a fight. Poole testified that the funeral attendees stopped on Smith Cemetery Road, by his trailer, and challenged Poole to a fight. While Tripp and Poole were still involved in a verbal altercation, Ray Hill flagged down Deputy Felts in his marked OPSO vehicle. Deputies Craig, Frost, and Felts had just left a training center on Trade Street which intersects with Smith Cemetery Road at Poole's property. Deputy Felts testified that around 4:30 p.m. he was flagged down at the intersection by several individuals, one of whom was later identified as Hill. They told Deputy Felts that they had been involved in a confrontation with Poole while attending a funeral at Smith Cemetery. The funeral attendees specifically stated

that Poole had yelled and cursed at them while they were participating in the service.

While Deputy Felts was talking with the attendees, Deputy Frost arrived at the scene. Deputy Frost testified that he heard the funeral attendees complain to Deputy Felts that Poole had yelled profanities at them as they were leaving the cemetery.[2]

After Deputy Felts spoke with the funeral attendees, he proceeded up to the porch of the trailer to talk to Poole and get his side of the story. Deputy Felts stood on the porch facing Poole, who stood in front of the door to the trailer. Deputy Felts testified that he listened to Poole explain that the funeral attendees had been trespassing on his property. Deputy Felts then advised Poole that he could not prevent people from driving down Smith Cemetery Road. Poole responded that Deputy Felts did not know what he was talking about and, using profanity, stated that Deputy Felts should call Captain Morris.

After the brief conversation between Poole and Deputy Felts, Poole turned away from Deputy Felts in order to enter his trailer. Deputy Felts then grabbed Poole's wrist and advised him that he was not finished with his investigation. Poole attempted to jerk his arm away and was then informed by Deputy Felts that he was under arrest. When Poole attempted to pull his arm away and retreat inside his residence again, he was taken to the ground by Deputy Felts. Deputy Felts and another unidentified deputy then restrained Poole while he was lying on the porch by placing pressure on his back with their knees. Poole states that he did not know that Deputy Felts was a peace officer and turned to avoid what was an apparent hostile and potentially violent situation.

---

[2] Hill testified that she did not speak with Deputy Felts and she did not believe that Tripp did either. However Deputies Frost and Felts stated that Deputy Felts spoke with funeral attendees, later identified as Hill and Tripp, before Deputy Felts approached Poole.

Poole was charged with Resisting Arrest and Disturbing the Peace. As a result of the incident, Poole suffered an abrasion below his left eye, but was not treated by medical personnel at the scene. Poole also claims that he suffered injuries to his shoulder, back, and knees. Poole also suffered mental distress and was examined by Dr. Vandenberg, a psychiatrist. Poole entered a plea of "no contest"[3] to the Disturbing the Peace charge, but the remaining charge was dismissed.

On March 21, 2014, Poole filed the instant suit against Sheriff Russell and Deputies Felts, Frost, Craig, and Cox.

On October 4, 2016, at the commencement of trial, Poole dismissed all claims against Deputy Cox and all federal claims against Sheriff Russell. On that day, trial proceeded on the remaining claims.

###### B.       CONCLUSIONS OF LAW

Poole has asserted claims for false arrest, excessive force and retaliation under 18 U.S.C. § 1983 and battery and vicarious liability under Louisiana state law.

###### 1.       False Arrest

In *Heck v. Humphrey*, the United States Supreme Court held, generally, that a plaintiff who has been convicted of a crime cannot bring a Section 1983 claim challenging the constitutionality of his or her conviction, unless that conviction has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of *habeas corpus*. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). Specifically, the Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or

---

[3] A "no contest" plea is otherwise referred to as an Alford plea.

imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* "At the core of *Heck* is a proscription against allowing a civil suit to cast doubt on a criminal conviction. However, where no conflict exists between the conviction and the claims involved in the civil complaint, the § 1983 suit must be allowed to proceed." *Crowe v. Hoffman*, No. 12-687, 2013 WL 357006, at *2 (E.D. La. Jan. 29, 2013) (citing *Heck*, 512 U.S. at 487).

In *Walter v. Horseshoe Entertainment*, the Fifth Circuit held that:

In order to support a claim for unlawful [or false] arrest, a plaintiff must show that he was arrested without probable cause. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 481 (5th Cir. 1999). Here, the plaintiffs were arrested for crimes of which they were ultimately convicted. *Heck* therefore bars recovery for the false arrest claim, because the conviction necessarily implies that there was probable cause for the arrest. *Sappington v. Bartee*, 195 F.3d 234, 237 (5th Cir. 1999).

*Walter v. Horseshoe Entm't*, 483 Fed. App'x. 884, 887–88 (5th Cir. 2012).

Likewise, where the plaintiff's conviction on a charge for which he was arrested is by way of a guilty plea, or a plea of no contest, to that charge, the plea necessarily implies that there was probable cause for the arrest and, thus, that the arrest was not unlawful or false. *See, e.g.*, *Buckenberger v. Reed*, 342 Fed. App'x. 58, 61 (5th Cir. 2009); *Wallace v. City of Slidell*, No. 15-383, 2016 WL 1223065, at *2 (E.D. La. Mar. 29, 2016) ("By definition, the claim of false

6

arrest, in particular, challenges to the lawfulness of an arrest. By entering no-contest pleas, each

of the arrestee-Plaintiffs has been 'convicted' of crimes for which he or she was arrested. A

judgment on the false arrest claims in favor of the arrestee-Plaintiffs would necessarily imply the

invalidity of those convictions, which have not been reversed, expunged, or otherwise

invalidated. As a result, the claims of false arrest are barred."); *Magee v. Reed*, No. 14-1986,

2015 WL 5020252, at *3–4 (E.D. La. Aug. 19, 2015); *Idel v. New Orleans Police Dep't*, No.

11-1078-DEK, 2012 WL 860380, at *2–3 (E.D. La. Mar. 13, 2012); *DeLeon v. City of Corpus

Christi*, No. C.A. C-05-096, 2005 WL 2045562, at *2 (S.D. Tex. Aug. 24, 2005); *Barker v. Jack*,

No. 3:04-CV-0596-G, 2004 WL 1144144, at *2 n.2 (N.D. Tex. May 20, 2004).

Here, Poole pled no contest to a disturbing the peace charge. Therefore, his § 1983 false

arrest claim is barred by *Heck*. *See Gonzales v. Brazley*, No. CIV A 09-137, 2009 WL 2411800,

at *5 (E.D. La. Aug. 4, 2009) (holding that the plaintiff had no § 1983 false arrest claim for an

arrest that resulted in a conviction of disturbing the peace). To this extent, Judgment will be

entered in favor of Defendants on Poole's § 1983 claim for false arrest.

### 2.    Retaliation

Next, Poole asserts a § 1983 retaliation claim, contending that he was arrested for

exercising his First Amendment rights.[4] Poole's free speech retaliation claim is similarly

*Heck*-barred. To prevail on his free speech retaliation claim, Poole had to show that there was no

---

[4] Poole asserted in the Pre-Trial Order that "Defendants retaliated against Plaintiff by arresting him and using excessive force againsnt [sic] him for making calls concerning vandals and trespassers on his property." [Doc. No. 32, p. 5]. However, in the joint proposed verdict form submitted to the court, Poole only alleged a claim for retaliatory arrest. [Doc. No. 37, p. 2]. The Court advised Poole at trial to identify all claims not listed in the proposed verdict form, but he failed to identify a claim for excessive force as a basis for his § 1983 retaliation claim. Therefore, the Court will analyze only Poole's arrest as retaliation under § 1983.

probable cause to arrest him. *Hartman v. Moore*, 547 U.S. 250, 252 (2006) (holding that want of probable cause to support the underlying criminal charge must be alleged and proven for a First Amendment violation to be actionable).

Where a plaintiff was arrested for crimes of which he was ultimately convicted, *Heck* bars recovery for free speech retaliation because the conviction necessarily implies that there was probable cause for the arrest. *Walter*, 483 Fed. App'x at 887–88. Here, because a lack of probable cause is a requisite for his success on his First Amendment retaliation claim, but the want of such probable cause would invalidate his no contest plea to the charge of Disturbing the Peace, Poole's claim is barred by *Heck*. To this extent, Judgment is entered in favor of defendants and against Poole.

### 3.     Excessive Force

Poole also asserted a § 1983 claim for excessive force in violation of the Fourth Amendment. To establish this claim, Poole must demonstrate: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). Excessive force claims are necessarily fact-intensive; whether the force used is "excessive" or "unreasonable" depends on "the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (observing that this "area is one in which the result depends very much on the facts of each case"). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

> "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)). "The 'reasonableness' inquiry in an excessive force case is an objective one." *Id.* Along those lines, Fifth Circuit precedent also asks whether the officers, in applying the force, were responding with "measured and ascending actions that corresponded to [the suspect's] escalating verbal and physical resistence." *Pratt v. Harris Cty., Tex.*, 2016 WL 2343032 at *5 (5th Cir. May 3, 2016) (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012)).

Crucially, this analysis must be objective: To make out a Fourth Amendment violation, let alone one that violates clearly established law, "the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. Any "evil intentions" motivating an officer's objectively reasonable use of force "will not make a Fourth Amendment violation." *Id.* at 397. Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

First, Poole was arrested for a minor crime: disturbing the peace. This factor weighs in favor of finding a constitutional violation. *See Carter v. City of Carlsbad*, 799 F.Supp.2d 1147, 1157 (S.D. Cal. 2011) (finding misdemeanor offense will generally weigh against reasonableness of using taser in dart mode to apprehend suspect); *see also Davis v. City of Las Vegas*, 478 F.3d

1048, 1055 (9th Cir. 2007) (noting that trespassing and obstructing police officer were not severe crimes); *Massey v. Wharton*, 477 Fed. App'x. 256, 263 (5th Cir. 2012).

Second, whether Poole posed a threat to the officers or others is less clear. Hill testified that Poole made profanity-laced threats to some attendees of the funeral. When Deputy Felts stated that Poole was under arrest, Poole attempted to evade arrest by making a motion towards retreating into his trailer. Deputy Felts stated that Poole's attempt to evade arrest constituted a safety threat. Thus, the second factor weighs against the finding of a constitutional violation.

Finally, it is undisputed that during the interaction between Deputy Felts and Poole on the porch, Poole turned and made a motion for the door to his trailer. At that point Deputy Felts grabbed Poole's right wrist and instructed Poole that he was not done with his investigation. Deputy Felts and Hill both testified that Poole jerked his arm away from Deputy Felts and attempted to retreat inside his trailer once again. While Deputy Felts still had control of Poole's wrist, he told Poole that he was under arrest and took him to the floor of the porch by twisting Poole's arm. Deputy Felts and another unidentified deputy restrained Poole while he was lying on the porch by placing pressure on his back with their knees.

Under these circumstances, it was reasonable for Deputy Felts to restrain Poole from attempting to enter his trailer. Such an action by Poole could reasonably be construed as an attempt to evade arrest or pose a safety risk. *See also Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013) (holding that "controlled takedown" breaking two ribs of defendant resisting arrest was not excessive force). Indeed, in *Hogan*, the court noted that "[a] reasonable officer was also entitled to consider that tackling a suspect was not necessarily likely to result in broken ribs or similar injuries[,]" and that "no reasonable jury could conclude that the officers used excessive

force to subdue Hogan [by tackling him]." *Id.*

In *Deshotels v. Marshall*, 454 F. App'x 262 (5th Cir. 2011), the Fifth Circuit considered the use of force in subduing a burglary suspect. The court found that officers' straddling of the suspect, pulling on his arms, kneeling on his shoulder, and folding of his legs to stop him from kicking were all objectively reasonable, considering the size of the suspect and his immediate attempts to flee. *Id.* at 267–68.

In light of the circumstances, a reasonable officer could have decided that a takedown to the porch was necessary to subdue Poole.

Additionally, the tactics used to restrain Poole while handcuffs were obtained were also objectively reasonable. Deputy Felts and another unidentified deputy put their knees on Poole's back to restrain him until another deputy could retrieve handcuffs out of a vehicle.[5] Poole claims that his back was injured when the deputies put their knees on his back.

There is no bright-line rule forbidding police officers from using a knee to pin an arrestee to the ground. In *Castillo v. City of Round Rock, Texas*, for example, the Fifth Circuit held that officers had not used excessive force where they had restrained plaintiff "in the prone position on the ground, eventually handcuffing his hands behind his back," even though (1) one officer and a bystander "remained on [plaintiff's] back for four to six minutes;" (2) the officer "shoved his knee in the back of [plaintiff's] neck and kept it there for some five to ten minutes;" and (3) the plaintiff later died of asphyxiation. *Castillo v. City of Round Rock, Texas*, 177 F.3d 977, at *1 (5th Cir. 1999) (unpublished). The Court explained that the plaintiff had "actively resist[ed] by

---

[5] The only other deputies present besides Deputy Felts at the time were Deputy Frost and Deputy Craig.

kicking and yelling" and had bloodied one officer's nose "in a manner that a reasonable officer could perceive as hostile." *Id.* at *3. The officers had not acted unreasonably when they placed the plaintiff in the prone position and "incapacitat[ed] him as quickly and professionally as possible, by climbing on top of his back and securing his hands and legs . . . ." *Id.* Similarly, in *Deshotels*, the court held that police officers acted reasonably when one officer kneeled on arrestee's right shoulder, another straddled his back and pulled on his arm, and the third folded arrestee's legs together to stop him from kicking—even though the arrestee died of asphyxia shortly thereafter. *Deshotels*, 454 F. App'x at 268.

In this case, the facts are far less egregious than *Deshotels* and *Castillo*. As previously described, a reasonable officer could have interpreted Poole's actions as resistance to arrest when he admittedly pulled his arm away and attempted to retreat into his trailer. While there is no evidence he resisted to the extent of the plaintiffs in *Deshotels* and *Castillo*, a reasonable officer could have believed that Poole was resisting or evading an arrest and that it was necessary to pin him to the ground with a knee. Further, credible testimony at trial showed that Poole was on the porch restrained by the knees of two deputies for a much shorter period of time.

Moreover, the fact that Deputy Felts and the other unidentified deputy stood up as soon as Poole was handcuffed suggests that the deputies used their knees only insofar as it was necessary to effect Poole's arrest. Thus, in light of Poole's apparent resistance to arrest, Deputy Felts' decision to pin Poole to the floor with his knee, freeing his hands to help with handcuffing, was neither excessive nor objectively unreasonable. Based on a totality of the circumstances, the conduct of Deputy Felts and the unidentified deputy was reasonable under the circumstances. *See Saucier*, 533 U.S. at 201.

Plaintiff also alleged that Deputies Craig and Frost were present and failed to protect Poole from excessive force. An officer can be liable under Section 1983 for failing to prevent another officer's use of excessive force where the bystanding officer: (1) knew that a fellow officer was violating an individual's constitutional rights, (2) had a reasonable opportunity to prevent the violation, and (3) chose not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). Of logical necessity, the existence of a constitutional violation is an absolute prerequisite to a failure to intervene claim. *See id.*

Here, the Court has already determined that the deputies who engaged in direct contact with Poole did not commit any constitutional violations. Therefore, the bystander deputies did not fail to intervene because there was no violation of Poole's constitutional rights. *See Whitley*, 726 F.3d at 646.[6] Judgment is entered in favor of Defendants and against Poole on his § 1983 excessive force claim.

### 4.    Louisiana State Law Battery

Poole also asserts a claim of battery based on the deputies' actions restraining him. Under Louisiana law, the tort of battery, when raised against a law enforcement officer acting in the course of employment, requires a showing that the law enforcement officer acted with unreasonable or excessive force. *Gerard v. Parish of Jefferson*, 424 So.2d 440, 444 (La. Ct. App. 1982) (citing *Kyle*, 353 So. 2d at 972); *see also Taylor v. United States*, 1991 WL 280066 (E.D.

---

[6] Plaintiff presented evidence to suggest that he lacked knowledge that Deputy Felts was a peace officer during Deputy Felts' initial contact with him. Plaintiff's argument in this regard is not clear. However, the testimony elicited at trial makes clear that a reasonable person would have been aware of the fact Deputy Felts was a peace officer. Deputy Felts had at least five prior interactions with Poole while Deputy Felts was on duty and in his Sheriff's Deputy uniform. Additionally, a reasonable person would have known from the facts and circumstances at the time that Deputy Felts was a peace officer, even though he was not in uniform.

La. Dec. 19, 1991) ("Under Louisiana law, in the absence of the use of excessive force, a law enforcement officer cannot be held liable for assault and battery if the assault and battery occurred during a lawful arrest.").

The use of force by law enforcement officers is scrutinized by considering the "reasonable force" standard established by Louisiana Code of Criminal Procedure art. 220:

> A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained.

Louisiana's excessive force tort mirrors its federal constitutional counterpart. *See Kyle v. City of New Orleans*, 353 So.2d 969, 972 (La. 1977).

Factors in determining whether the force exerted was reasonable under the circumstances entail: the known character of the arrestee; the risks and dangers faced by the officer; the nature of the offense or behavior involved; the chance of escape if the particular means are not employed; the existence of alternative methods of arrest or subduing the arrestee; the physical strength, size and weaponry of the officers as compared to that of the arrestee; and the exigencies of the moment. *Id.* at 973. The Fifth Circuit has determined that these considerations are functionally equivalent to the § 1983 *Graham* factors. *See Deville*, 567 F.3d at 173.

As set forth above, Deputy Felts acted reasonably under the circumstances. Deputy Felts and the unidentified deputy did nothing more than restrain Poole while effecting his arrest. Deputies Frost and Craig, as bystanders, had no liability for battery as they were merely witnesses to Deputy Felts' appropriate restraint of Poole. Judgment is entered in favor of defendants and against Poole on his state law battery claim.

14

5.      **Vicarious Liability**

Finally, Poole argues that Sheriff Russell is vicariously liable under Louisiana law for the tortious conduct of his deputies.

Under LA. CIV. CODE ANN. art. 2320, "an employer is subject to vicarious liability for the tortious conduct of his employee, irrespective of his title, while acting within the course and scope of employment." *Brasseaux v. Town of Mamou*, 752 So.2d 815, 821 (La. 2000). Governmental entities "do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer." *Deville*, 567 F.3d at 173 (citing *Brasseaux*, 752 So.2d 815); *see also Bussey v. Dillard Dep't. Stores, Inc.*, 984 So.2d 781, 784 (La. App. 1st Cir. 2008) ("[V]icarious liability [under article 2320] applies to law enforcement employers as well.") (citations omitted).

The Louisiana Supreme Court has "stated that an employee's conduct is generally within the course and scope of his employment if the conduct is of the character and nature that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." *Id.* at 820 (internal citations omitted).  Liability is

> predicated on whether the tortious conduct of the employee is "so closely connected in time, place, and causation to his employment-related duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interests."

*Id.* (quoting *LeBrane v. Lewis*, 292 So.2d 216 (La. 1974). Whether vicarious liability applies is a mixed question of law and fact. *Bates v. Caruso*, 003-CA-2150 (La. App. 4 Cir. 07/28/04); 881

15

So.2d 758, 761.

However, in order to have a claim for vicarious liability against an employer under Louisiana law, there must be a claim against a culpable employee. Here, there is no culpable employee for liability to attach. Therefore, the claim against Sheriff Jay Russell for vicarious liability fails. The Court will enter a Judgment in favor of Sheriff Jay Russell and against Poole on his claim for vicarious liability.

## CONCLUSION

For the foregoing reasons, the Court enters judgment in favor of Defendants Sheriff Russell and Deputies Felts, Frost, Craig, and Cox and against Plaintiff Poole.

MONROE, LOUISIANA, this 18th day of October, 2016.


**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**

16